UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL OVERACKER,                    )
                                      )   No. CV-11-3017-CI
        Plaintiff,                    )
                                      )   ORDER GRANTING DEFENDANT'S
v.                                    )   MOTION FOR SUMMARY JUDGMENT
                                      )
MICHAEL J. ASTRUE, Commissioner       )
of Social Security,                   )
                                      )
        Defendant.                    )
                                      )
_____   )

    BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF
No. 129, 24.  Attorney D. James Tree represents Michael Overacker
(Plaintiff); Special Assistant United States Attorney Lisa Goldoftas
represents the Commissioner of Social Security (Defendant).  The
parties have consented to proceed before a magistrate judge.  ECF
No. 8.  After reviewing the administrative record and briefs filed
by the parties, the court **GRANTS** Defendant's Motion for Summary
Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

                          **JURISDICTION**

    On August 15, 2006, Plaintiff protectively filed a Title XVI
application for supplemental security income, alleging disability
beginning March 20, 2003.  Tr. 14; 128.  In his application for
benefits, Plaintiff reported that he stopped working due to several
conditions including right shoulder injury, and injury to his left
leg and rib.  Tr. 145.  Plaintiff's claim was denied initially and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 65-94. A hearing was held on July 28, 2009, at which Vocational Expert Daniel R. McKinney, Sr., and Plaintiff, who was represented by counsel, testified. Tr. 28-54. ALJ Robert S. Chester presided. Tr. 26. The ALJ denied benefits on September 21, 2009. Tr. 14-25. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 45 years old, and lived in a mobile home with his disabled parents. Tr. 32. He completed the sixth grade, when he quit school to care for his schizophrenic mother. Tr. 32. Plaintiff has worked as a warehouse and cannery worker. Tr. 48-49.

Plaintiff was injured while working for a winery in March 2005. He was moving an "extremely large extension ladder from one 18,000 gallon wine tank to another," when it fell and he tried to brace it with his body. Tr. 49. He heard his shoulder and neck both crunch. Tr. 41. Plaintiff testified that as a result, he has "massive pain all the time" in his back, down through his arms, and in his ribs and legs. Tr. 33. He said he has carpal tunnel syndrome and he wears a wrist brace nearly all the time. Tr. 33. Plaintiff also testified that he has braces for his left knee and his right ankle. Tr. 38. He also testified that he takes medication for pain, muscle spasms and depression. Tr. 34-35. He estimated that where ten is the worst pain imaginable, his pain level is usually an eight, all day long, despite his medications. Tr. 35. Plaintiff testified that ever since he was hurt, his pain "has been there." Tr. 45.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Physical therapy helped somewhat.  Tr. 45.  Plaintiff uses a TENS unit three to four times per week, when his pain becomes unbearable. Tr. 35.  On those days, he said he has to lie down, off and on, for up to four or five hours.  Tr. 36.  He does not sleep well due to pain, and he is unable to hold things in his hands for a long time. Tr. 36.  Plaintiff said he can lift and carry up to ten pounds, he can walk a couple of blocks before he has to stop to rest, and despite the fact that his driver's license is suspended, he drives on occasion.  Tr. 37; 43-44.  Plaintiff said his depression makes him isolate himself up to seventy times per month, and he has spent entire days in his room without leaving it.  Tr. 39.

Plaintiff helps his parents by doing dishes, cooking and performing household chores.  Tr. 43.  He smokes half a pack of cigarettes a day and said he has not used alcohol since his DUI in 2004.  Tr. 44.

**ADMINISTRATIVE DECISION**

At step one, ALJ Chester found Plaintiff had not engaged in substantial gainful activity since August 15, 2006, the onset date. Tr. 16.  At step two, he found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; carpal tunnel syndrome, neck and right shoulder injury.  Tr. 16.  At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1(20 C.F.R. 416.920(d), 416.925 and 416.926).  Tr. 21.  In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the Residual Functional Capacity ("RFC") findings.  Tr. 20.  The ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  found that Plaintiff was unable to perform any past relevant work,

2  but has the RFC to perform light work, except that he can only

3  occasionally climb ladders, ropes or scaffolds, kneel, crouch or

4  crawl and can frequently handle, feel and reach with his right

5  dominant hand. Tr. 19; 23. Finally, after considering Plaintiff's

6  age, education, work experience, and residual functional capacity,

7  the ALJ concluded jobs exist in significant numbers in the national

8  economy that the Plaintiff can perform, such as hand packager and

9  cashier. Tr. 24.

10                        **STANDARD OF REVIEW**

11      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

12  court set out the standard of review:

13          A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
14      211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the
        Commissioner may be reversed only if it is not supported
15      by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
16      Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance. *Id.* at 1098.
17      Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
18      support a conclusion. *Richardson v. Perales*, 402 U.S.
        389, 401 (1971). If the evidence is susceptible to more
19      than one rational interpretation, the court may not
        substitute its judgment for that of the Commissioner.
20      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
        Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

21

22          The ALJ is responsible for determining credibility,
        resolving conflicts in medical testimony, and resolving
        ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
23      Cir. 1995). The ALJ's determinations of law are reviewed
        *de novo*, although deference is owed to a reasonable
24      construction of the applicable statutes. *McNatt v. Apfel*,
        201 F.3d 1084, 1087 (9th Cir. 2000).

25

26      It is the role of the trier of fact, not this court, to resolve

27  conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

28  supports more than one rational interpretation, the court may not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by: (1) finding Plaintiff was not credible; (2) finding Plaintiff's depression non-severe; (3) failing to fully develop the record; (4) improperly rejecting Dr. Deramo's medical opinions; and (5) failing to meet his burden at Step 5 to identify specific jobs, available in significant numbers, that Plaintiff could perform. ECF No. 20 at 9. Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. ECF No. 25.

**DISCUSSION**

**A.   Credibility.**

Plaintiff contends that the ALJ did not provide "clear and convincing" reasons for rejecting his subjective complaints. Additionally, Plaintiff contends that the ALJ failed to identify the testimony that was not credible and the evidence that undermined Plaintiff's complaints. ECF No. 20 at 16.

To determine whether the claimant's testimony regarding the severity of symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater,* 80 F.3d 1273,1284 (9th Cir. 1996). Absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving "clear and convincing" reasons. *Smolen*, 80 F.3d at

1283-84. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan*, 169 F.3d at 599. The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. See *Smolen,* 80 F.3d at 1285. If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)("credibility determinations are the province of the ALJ").

Contrary to Plaintiff's assertions, the ALJ provided several reasons that supported the finding that Plaintiff's testimony was not credible. The ALJ identified "significant inconsistencies" that existed between Plaintiff's testimony and the medical records regarding Plaintiff's pain level. Tr. 20. Additionally, the ALJ cited Plaintiff's daily activities as contradicting the reported severity of his pain, Plaintiff's claim he wore wrist braces 24 hours per day, seven days a week, and Plaintiff's refusal to have surgery. Tr. 20-21.

The record reveals Plaintiff's testimony about his constant pain level is contradicted by treatment notes. Tr. 35; 45; 252-70. SSR 96-7p requires that in considering a claimant's credibility, the ALJ consider, among other things, the consistency of the claimant's testimony with the medical record and with the claimant's own prior statements. SSR 96-7p also states, however, that "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve over time, and this may explain why the individual does not always allege the same intensity, persistence, or

functional effects of his or her symptoms."

At the hearing, Plaintiff testified that the pain was "usually about 8 [out of 10] all day long, even with my meds." Tr. 35. Plaintiff also testified that his pain has been an 8 since he was hurt. Tr. 45. As the ALJ noted, treatment records indicate Plaintiff reported his pain was decreasing, and even estimated his back pain at zero in April 2008. Tr. 20; 252; 260-61; 281; 341. The record supports the ALJ's finding that Plaintiff's testimony regarding his persistent pain level was inconsistent with treatment records, and this was a proper factor for the ALJ to rely upon in assessing Plaintiff's credibility.

Additionally, the ALJ properly considered daily living activities in his credibility analysis. If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. See *Fair*, 885 F.2d at 603; see also *Morgan*, 169 F.3d at 600(claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). In this case, the ALJ found Plaintiff's daily activities could not be performed if his symptoms were as severe as he claimed. Tr. 21. Specifically, the ALJ cited Plaintiff's activities of providing assistance to his parents with household chores such as dishes, vacuuming, laundry, taking his father shopping for groceries, caring for two dogs, fishing with his father two to three times per year, driving, shopping, and outdoor gardening. Tr. 20-21. The ALJ provided specific findings related to Plaintiff's daily activities that were supported by substantial evidence and, thus,

the ALJ properly evaluated the testimony.

Finally, the ALJ relied upon the fact that Plaintiff had declined to have surgery for his neck condition and his carpal tunnel syndrome, and at the hearing, Plaintiff's wrist braces appeared "very clean and unworn." Tr. 20. In assessing credibility, an ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Based upon the ALJ's observations, Plaintiff's assertion that he constantly used the recommended wrist braces was not credible.[1]

The ALJ's findings related to Plaintiff's refusal to have surgical procedures on his neck and wrists is problematic. It is improper to deny benefits on the basis of declined surgery, when surgery is only suggested rather than a prescribed course of treatment. See *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (a claimant's refusal to undergo surgical treatment is not a sufficient reason to deny benefits where surgery was at most recommended or suggested but not prescribed by a physician); *see also Young v. Califano*, 633 F.2d 469, 472-73 (6th Cir. 1980) (unwillingness to undergo a suggested surgery does not constitute failure to follow prescribed treatment). In this case, although plaintiff's testimony reflects that one doctor may have suggested the possibility of surgery for Plaintiff's neck issues, the medical evidence does not indicate that surgery was ever prescribed, and a second opinion indicated that surgery was not in Plaintiff's best

---

[1] The recommended wrist brace observations by the ALJ has not been addressed by the parties.

interest. "That various physicians suggested [an] operation does not necessarily mean that they prescribed it." *Schena v. Health & Human Services*, 635 F.2d 15, 19 (1st Cir. 1980). Moreover, an ALJ must examine the circumstances to determine if Plaintiff's reasons for refusing surgery are reasonable. See, e.g., *Nichols v. Califano*, 556 F.2d 931, 933 (9th Cir. 1977)("A claimant under a disability need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective.") In determining whether a claimant's refusal to undergo treatment is reasonable, i.e., supported by justifiable cause, several factors are considered, including the physician's outlook as to the success of the treatment, the nature of the treatment or surgery, the severity of the claimant's ailment, and a claimant's age, background, and medical history. *Nichols*, 556 F.3d at 933.

However, notwithstanding the aforementioned legitimate credibility findings, the ALJ's other purported reason for his adverse credibility finding – that Plaintiff declined to undergo surgery – is not a valid reason for discounting Plaintiff's credibility under these circumstances. A Plaintiff may decline prescribed treatment if he or she provides an "acceptable reason" for failure to follow the treatment. 20 C.F.R. § 404.1530(c). In this case, the Plaintiff explained that the first surgeon who suggested back surgery was inexperienced, and the second opinion from a surgeon at Harborview Hospital in Seattle indicated that Plaintiff was not a surgical candidate. Tr. 41. The record supports Plaintiff's assertions. Tr. 370, 375. With regard to Plaintiff's wrist surgery, he testified that he was "scared of it"

because his father had recently had back surgery and as a result, his father was wheelchair bound and had a leg amputated.   Tr. 43. It is not clear from the treatment notes in the record whether Plaintiff's refusal to undergo the surgeries was reasonable. Therefore, the ALJ's reliance on this reason for his adverse credibility finding was improper.

Nevertheless, the ALJ's misplaced reliance on Plaintiff's failure to seek surgical treatment in discounting credibility was "harmless." See *Batson,* 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record).   The ALJ's error does not "negate the validity" of his ultimate credibility finding, and the ALJ's decision remains "legally valid, despite such error."   *See Carmickle* v. Comm'r, SSA, 533 F.3d 1155, 1162 (9th Cir. 2008)(internal quotations and citation omitted).

**B.   Step Two: Depression.**

Plaintiff contends that the ALJ improperly dismissed his depression as groundless at step two.   ECF No. 20 at 11.   Plaintiff argues that the evidence established that he experienced significant depression due to his pain because depression had an impact on his pain.   ECF No. 20 at 12.   Additionally, Plaintiff said he would isolate himself for several days per month due to his depression and pain, and therefore the impairment caused more than a slight limitation on his ability to work. ECF No. 20 at 12.

At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, i.e., one

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. In addition, the impairment must last, or be expected to last, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909 (durational requirement). The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. See, e.g., *Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 602-03; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. See *Bowen*, 482 U.S. at 145; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290(quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen,* 482 U.S. at 153-54).

In determining whether a claimant's impairments are severe at step two, the ALJ evaluates the medical evidence and explains the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

weight given to the opinions of acceptable medical sources in the record.   SSR 85-28.   If the medical source is an examining or treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting an uncontradicted opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).   If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043.   Where a medical source opinion is based primarily on a claimant's self-reported symptoms, credibility is an appropriate factor to consider in the evaluation of medical evidence.   *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

     The ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and therefore is nonsevere."   Tr. 17.   The ALJ reviewed the four broad functional areas and found that none of the impairments caused more than mild limitations.   Tr. 17.   In assessing Plaintiff's performance in the four functional areas, the ALJ relied upon Plaintiff's admissions in his Function Report.   Tr. 17; 132-39.

     To the extent that the ALJ found that Plaintiff's depression was not severe, this court must affirm that finding if substantial evidence supports a finding that the medical evidence clearly established that Plaintiff's depression was only a slight abnormality with a minimal effect on Plaintiff's ability to work. See *Webb,* 433 F.3d at 687.   The record supports the ALJ's determination.   For example, on January 29, 2008, Plaintiff told

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

Mark Deramo, M.D., that he had some depression. Tr. 202. Dr. Deramo noted Plaintiff's reported depression, and indicated that it was stable. Tr. 203. Similarly, on May 19, 2008, Plaintiff reported that he was doing well with medication for depression, and he indicated that he did not want to change: "feels management is good now, not interested in any changes." Tr. 198. On January 5, 2009, Plaintiff reported his depression was "bad," but Mark Deramo, M.D., noted that a test measuring depression assigned a rating of 4 out of 27. Tr. 413. At that visit, Dr. Deramo did not include depression among Plaintiff's diagnoses. Tr. 414.

Plaintiff alleged that his depression caused him to remain inside his room 70 times per month, but the ALJ properly found Plaintiff's overall credibility was lacking. Tr. 17. Additionally, the ALJ noted Plaintiff admitted he was able to visit friends two to three times per month. Tr. 17. The evidence supports the ALJ's determination that Plaintiff's depression did not amount to a severe impairment.

**C.   Duty to Develop the Record.**

Plaintiff argues that the ALJ failed to fulfill his duty to develop the record. At the administrative hearing, Plaintiff's counsel advised the court that it believed additional medical exams were needed regarding Plaintiff's depression:

> ALJ: Is there anything else out there that needs to be added to the record?
>
> ATTY: Well, we think that the psychological component of the case needs to be developed, but other than that, no.
>
> ALJ: All right. Has there been any evaluations that you're aware of that are not in the record?
>
> ATTY: No, no. It would have to be done by a consulting exam. There's references in the record with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

his treating doctor that he does have depression, but no
development of that that I'm aware.

Tr. 29. Plaintiff argues that the ALJ's failure to order additional
testing was error.  ECF No. 20 at 13.

In Social Security cases, the law is well-settled that the ALJ
has an affirmative "duty to fully and fairly develop the record and
to assure that the claimant's interests are considered . . . even
when the claimant is represented by counsel." *Celaya v. Halter*, 332
F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting
*Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *Smolen*, 80 F.3d
at 1273). "The ALJ's duty to supplement a claimant's record is
triggered by ambiguous evidence, the ALJ's own finding that the
record is inadequate or the ALJ's reliance on an expert's conclusion
that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683,
687 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d at 1144,
1150 (9th Cir. 2001)). "In cases of mental impairments, this duty is
especially important." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th
Cir. 1990).

The ALJ has a duty "to scrupulously and conscientiously probe
into, inquire of, and explore all the relevant facts" by procuring
the necessary, relevant treatment records. *Higbee v. Sullivan*, 975
F.2d 558, 561 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.
1978)); see also 20 C.F.R. § 404.944 (stating that the ALJ may
continue the hearing if he believes material evidence is missing,
and may reopen the hearing at any time prior to mailing a notice of
decision to receive new and material evidence); 20 C.F.R. §
416.1450(d) (providing that the ALJ may issue subpoenas on his own
initiative or at the request of a  party); 20 C.F.R. § 416.919a

(explaining that the Commissioner may order a consultative examination when a conflict, ambiguity, or insufficiency in the evidence must be resolved).

In this case, the ALJ had no duty to further develop the record. The medical record does not establish that Plaintiff's depression was so severe as to prevent him from doing any gainful activity. An ALJ "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). Such an examination is necessary when "'additional evidence needed is not contained in the records' . . . and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" *Id.* As indicated previously, no additional evidence was needed; there was no ambiguity or insufficiency present in the available evidence. The ALJ did not err.

**D.   Medical Opinions.**

Plaintiff contends that the ALJ erred by rejecting Dr. Deramo's opinions concerning Plaintiff's depression and how it impacted his chronic pain issues and potential absenteeism. ECF No. 20 at 14.

The ALJ considered the opinions of several doctors, including Dr. Deramo and stated that he gave the opinions substantial weight, according to examining and treating status. Tr. 21. Specifically, the ALJ addressed Dr. Deramo's opinion:

> In June 2008 and January, 2009, the claimant was evaluated by Mark Deramo, M.D., for DSHS purposes. Dr. Deramo opined in both instances that despite the claimant's carpal tunnel and neck pain diagnoses, he was capable of light duty exertional work.
>
> In March 2009, Dr. Deramo completed a medical report questionnaire at the request of the claimant's representative. Dr. Deramo opined that although the claimant's physical or mental conditions were reasonably likely to cause pain, the claimant was capable of work activities on a regular and continuous basis at a light or

1  sedentary level.

2  Tr. 22.

3      The record supports the ALJ's assessment of Plaintiff's RFC

4  based upon the medical opinions.  On October 16, 2008, Dr. Deramo

5  opined that Plaintiff "is unlikely to be able to return to moderate

6  or heavy-duty work, but that he should be okay to do sedentary or

7  light-duty work. . . . The patient does have a history of depression

8  which may also have an impact on his pain and should also be treated

9  appropriately." Tr. 415.  On January 5, 2009, Dr. Deramo noted that

10 Plaintiff expressed his depression was "bad," but his Patient Health

11 Questionnaire score was only 4 out of 27.  Tr. 413.  During that

12 visit, Dr. Deramo did not include depression in Plaintiff's

13 diagnoses.  Tr. 414.  Instead, Dr. Deramo commented, "Cervical

14 spinal stenosis/carpal tunnel syndrome with chronic pain.  I believe

15 the patient currently has moderate interference with work-related

16 activities due to the above diagnoses.  I believe he is suitable for

17 light or sedentary duty." Tr. 414.  On a form dated March 26, 2009,

18 Dr. Deramo indicated it was unknown how many days on average, per

19 month, of work Plaintiff might miss work, due to medical

20 impairments.[2]  Tr. 412.  Dr. Deramo wrote that to answer this query,

21

22 _____

23      [2] Plaintiff argues that the large circle Dr. Deramo wrote on

24 the page encompasses both "1 day" and "2 days" per month.  However,

25 the center of the hand-drawn circle appears to encircle the

26 question, "how many days," and does not suggest an answer.  If the

27 evidence can reasonably support either affirming or reversing a

28 decision, the court may not substitute its own judgment for that of

the Commissioner. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

Plaintiff would need an Independent Medical Exam or physical activity exam. Tr. 412. The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(internal quotations and citations omitted). Considering the record as a whole, the evidence does not support Plaintiff's assertion that Dr. Deramo opined Plaintiff's impairments would cause him to miss one to two workdays per week. The ALJ gave substantial weight to Dr. Deramo's opinion, and that opinion is consistent with Plaintiff's RFC.

**E.   Step Five.**

Plaintiff contends that the ALJ erred by relying upon an incomplete hypothetical that was posed to the VE. ECF No. 20 at 19. The hypothetical posed to the VE included a similarly situated worker who could work at the light level but was limited to an occasional use of ladders, ropes or scaffolds, occasional kneeling, crouching or crawling and frequent reaching with his dominant hand. Tr. 50. The VE responded that such a person could perform a broad range of sedentary and light unskilled work that would include assembly workers, hand packers and cashiering. Tr. 50-51. When handling and fingering was changed to "frequent," the VE opined that limitation would probably eliminate the assembly occupations, but not the cashiering and hand packer jobs. Tr. 52. When handling and fingering was decreased to "occasionally," the VE opined that "a person who has access only to sedentary jobs, and can't use their

(9th Cir. 2006).

hands bilaterally frequently, continuously would probably only have access to odd lot or [INAUDIBLE] employment." Tr. 52. The VE also testified that an employee who missed more than two days of work at unpredictable times due to pain would not be able to sustain employment. Tr. 52-53.

Plaintiff argues that the ALJ's hypothetical was incomplete because it did not properly account for Plaintiff's restrictions in the use of his right upper extremity. ECF No. 20 at 19. Plaintiff cited the September 15, 2003, opinion of Dr. Moran, who stated Plaintiff "will likely wind up with some degree of persistent symptoms or disability from the right shoulder." Tr. 378. While Dr. Moran's 2003 prediction was Plaintiff would have "some degree" of chronic symptoms, the opinion was not specific about the severity of the limitations Plaintiff might experience and, thus, this statement does not support Plaintiff's assertion that he was limited to occasional handling and fingering. Moreover, on October 14, 2006, Marie Ho, M.D., examined Plaintiff and opined he was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and he could kneel and crouch occasionally. Tr. 183. Dr. Ho indicated Plaintiff had "no other manipulative or environmental limitations." Tr. 183. On October 27, 2006, Bruce Van Fossen assessed Plaintiff with limited restrictions with reaching on his right side, and unlimited restrictions on handling, fingering and feeling. Tr. 187. On January 30, 2007, Norman Staley, M.D., affirmed that opinion. Tr. 192. In short, the record does not support Plaintiff's argument that he was limited to occasional handling and fingering. As a result, Plaintiff's argument that the hypothetical was flawed and the ALJ erred by

relying upon a flawed hypothetical fails.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.   Accordingly,

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment **ECF No.24** is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment **ECF No. 19** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED.**

DATED November 30, 2012.


           _____S/ CYNTHIA IMBROGNO_____
           UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20